UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re Application of

Banco BNP Paribas Brasil S.A.,

For an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings

Case No. 22 Misc._____

**MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782**

KELLNER HERLIHY GETTY & FRIEDMAN, LLP
Berenice Le Diascorn
*Attorneys for Banco BNP Paribas Brasil S.A.*
470 Park Avenue South—7th Floor
New York, NY 10016-6819
Telephone: (212) 889-2121
Email: berenice.lediascorn@khgflaw.com

# TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF AUTHORITIES ................................................................................ | ii-iii |
| PRELIMINARY STATEMENT ........................................................................ | 1 |
| RELEVANT BACKGROUND ......................................................................... | 3 |
| ARGUMENT ..................................................................................................... | 4 |
| I. STANDARD FOR GRANTING RELIEF .................................................. | 4 |
| II. APPLICANT MEETS SECTION 1782'S STATUTORY REQUIREMENTS ........................................................................................ | 5 |
| A. The Respondents reside or are found in this district ......................... | 5 |
| 1. Legal standard ........................................................................ | 5 |
| 2. The Discovery sought in this Application proximately results from the Respondents' contacts with the Southern District of New York ................................ | 6 |
| B. The Discovery sought is for use in a proceeding in a foreign tribunal ................................................................................. | 9 |
| C. Applicant is an Interested Person ...................................................... | 10 |
| III. APPLICANT MEETS THE *INTEL* DISCRETIONARY FACTORS ...................................................................................................... | 13 |
| IV. APPLICANT SHOULD NOT BE REQUIRED TO GIVE NOTICE TO THE FOREIGN DEFENDANTS, THE DISCOVERY TARGETS, AND THE RESPONDENTS ........................... | 13 |
| CONCLUSION ................................................................................................... | 15 |

# TABLE OF AUTHORITIES

                                                                                       **Page**

*Brandi-Dohrn v. IKB Deutsche Industriebank AG,*
    673 F.3d 76 (2d Cir. 2012) ..................................................................4,5,11,12

*Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.,*
    798 F.3d 113, 116 (2d Cir. 2015) ......................................................................9

*Edelman v. Taittinger (In re Edelman),*
    295 F.3d 171 (2d Cir. 2002) ..............................................................................5

*Euromepa S.A. v. R. Esmerian, Inc.,*
    51 F.3d 1095, 1101 (2d Cir. 1995) ..................................................................13

*First Am. Corp. v. Price Waterhouse Ltd. Liab. P'ship,*
    154 F.3d 16 (2d Cir. 1998) ................................................................................8

*Gucci Am., Inc. v. Weixing Li,*
    135 F. Supp. 3d 87 (S.D.N.Y. 2015) .................................................................8

*Gushlak v. Gushlak,*
    486 F. App'x 215 (2d Cir. 2012).................................................................4,5,9

*In re del Valle Ruiz,*
    2019 U.S. App. LEXIS 30002 (2d Cir. October 7, 2019) .......................... 4-6,11

*In re Gorsoan Ltd.,*
    2020 WL 409729 (S.D.N.Y. 2020) ...................................................................9

*In re Mangouras,*
    2017 WL 4990655 (S.D.N.Y. 2017) .............................................................9,11

*In re Olga Kurbatova,*
    Case No. 18-mc-469 (S.D.N.Y. 2018). ............................................................13

*In re Reyes,*
    2019 WL 6170901 (S.D.N.Y. 2019). ..............................................................13

*In re Speer,*
    754 F. App'x 62, 63–64 (2d Cir. 2019)............................................................13

*Intel Corp. v. Advanced Micro Devices, Inc.,*
    542 U.S. 241 (2004) ........................................................................ 4,5,9-13,15

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP,*
    895 F.3d 244 (2d Cir. 2018) ..............................................................................5

*Licci v. Lebanese Can. Bank, SAL (Licci III),*
    20 N.Y.3d 327 (2012) ................................................................................................7,8

*Licci v. Lebanese Canadian Bank (Licci IV)*,
    732 F.3d 161 (2d Cir. 2013) ...........................................................................................8

*Malmberg v. United States,*
    2010 WL 1186573, at *2 (N.D.N.Y. 2010) ...................................................................13

*Mees v. Buiter*,
    793 F.3d 291 (2d Cir. 2015) ........................................................................................4,9

*Nike, Inc. v. Wu,*
    349 F. Supp. 3d 310 (S.D.N.Y. 2018) ..........................................................................6,9

*Nike, Inc. v. Wu*,
    349 F. Supp. 3d 346 (S.D.N.Y. 2018) ..........................................................................6,8

*Ragusa v. United Parcel Serv.*,
    2008 WL 4200288, at *1 (S.D.N.Y. 2008) ....................................................................13

*Symeou v. Hornbeam Corp. (In re Hornbeam Corp.)*,
    722 F. App'x 7 (2d Cir. 2018) ..............................................................................4,9,10,13

## **STATUTES, RULES, & OTHER AUTHORITIES**

28 U.S.C. § 1782 ................................................................................... 1,3-7,9-13,15

Fed. Rule Civ. Procedure 45 ....................................................................................13

Applicant BANCO BNP PARIBAS BRASIL S.A. by and through its undersigned counsel, Kellner Herlihy Getty & Friedman LLP, submits this memorandum of law in support of its Application for judicial assistance pursuant to 28 U.S.C. § 1782.

**PRELIMINARY STATEMENT**

Applicant submits this Application pursuant to 28 U.S.C. § 1782, seeking an order authorizing discovery from certain entities found in this District that are in the business of processing wire transfers in New York City,[1] for use in the Pending and Restructuration Proceedings[2] (together the "Foreign Proceedings").

Applicant loaned USD 8,600,000.00 to Copertrading, through two ACCs due April 30th, 2015. Vieira Decl. ¶5. The ACCs were amended twice to postpone the due date to October 30th, 2017, and to grant Applicants collaterals (the CDAs and WAs) and the fiduciary assignment of the receivables derived from them. *Id*.

In October 2017, when the Debt became due, Copertrading failed to comply with its repayment obligations. *Id*. ¶7.

Concurrently, on October 24th, 2017, Copertrading filed for judicial reorganization. *Id*. ¶8. When filing the Reorganization Proceeding, Copertrading wrongfully listed the debt owed to Applicant under the ACCs as "unsecured", despite the CDAs and WAs. *Id*. ¶9.

In January 2018, Applicant sought to enforce the CDAs and WAs. *Id*. ¶¶11-12. Applicant filed the Pending Proceeding against Empat, requesting turnover of the sugar Empat held as security for Copertrading's repayment of the Debt under the collaterals, or, had Copertrading

---

[1] Applicant seeks discovery from Citibank, N.A., The Bank of New York Mellon, Société Générale, New York Branch, HSBC Bank USA, N.A., BNP Paribas USA, JPMorgan Chase Bank, N.A., Barclays Bank PLC, Deutsche Bank Trust Co. Americas, The Bank of Nova Scotia, New York Agency, UBS AG, Bank of America, N.A., Standard Chartered Bank US, Commerzbank AG, New York Branch (collectively the "New York Banks"); and The Clearing House Payments Company LLC ("TCH") (collectively, the "Respondents"). (Vieira Decl., ¶21.)
[2] Unless otherwise indicated, capitalized terms or names not otherwise defined herein shall have the meaning ascribed to them in the Declaration of Felipe Vieira dated August 30, 2022, and the Declaration of Berenice Le Diascorn dated August 31, 2022.

1

removed the sugar from its warehouse, that the turnover obligation be converted into a money judgment in an amount equivalent to the value of the sugar. *Id*.

Empat had removed the sugar from its warehouse, and Copertrading and Empat both contested that Applicant had a security interest in the sugar. *Id*. ¶¶9-14. Applicant reasonably believes that, in fact, Empat and Copertrading colluded to remove the sugar subject to the collateral granted to the Applicant, without the Applicant's consent and in fraud of Applicant's rights, and then used the Reorganization Court's ruling to justify their misdeed. *Id.* ¶15.

Applicant intends to obtain evidence that Copertrading, Empat, or a third-party entity used by them for the purpose of defrauding Applicant's rights, has received funds for exporting the sugar assigned to Applicant, which exportation was ultimately concealed by Copertrading from Applicant and the Reorganization Court. *Id.* ¶¶17-19.

The instant Application and evidence sought through this Application—records relating to wire transfers routed through the Respondents in New York City and documents relating thereto—is critical to plead and prove Applicant's Claims. *Id.,* ¶¶15-23.

The New York Banks act as correspondent banks in this District for wire transfers passing from domestic to international banks, and vice versa, including banks in Brazil. *Id*. ¶23; Le Diascorn Decl. ¶¶8-21. TCH provides both transmission of instruction messages and settlement of funds between financial institutions that are used to process international funds transfers. Le Diascorn Decl. ¶22. It is highly likely that records of wire transfers, payments, and data are held by the Respondents in New York and that these records will be relevant and probative in the Foreign Proceedings. Vieira Decl. ¶¶15-23.

For the reasons set forth below, Applicant respectfully requests that the Court grant the Application.

# RELEVANT BACKGROUND

### General background

The facts relevant to this Application are set forth herein and in the Vieira Declaration. The facts stated in the Vieira Declaration are incorporated herein by reference.

### Nature of evidence sought

Applicant seeks to obtain meaningful documentary evidence located in this District from the Respondents, which are found in this District and are in the business of processing wire transfers and payments, and will have processed wire transfers and payments, relevant and probative to the issues in the Foreign Proceedings—namely that Empat, Copertrading, or a third-party entity used by them for the purpose of defrauding Applicant's rights, have colluded to illegally export the sugar assigned to Applicant and conceal their wrongdoing.

The Respondents are commonly known to act as correspondent, intermediary, or otherwise clearinghouse for U.S. Dollar-denominated wire transfers passing from domestic banks to international banks, and vice versa, including banks in Brazil. Le Diascorn Decl. ¶¶8-22. The discovery sought in this proceeding directly relates to the Respondents' clearing business in this District—namely, wire transfers for which the Respondents were involved as originating bank, beneficiary bank, intermediate or correspondent bank to CHIPS, Fedwire, or where the Respondents otherwise facilitated interbank funds transfers, as well as documents relating thereto. Vieira Decl., ¶¶21-23.

The Respondents keep electronic records of wire transfers and are thus able to easily search and produce these records in connection with domestic litigation, foreign bankruptcy matters and Section 1782 applications, and produce such records routinely. Le Diascorn Decl., ¶23.

# ARGUMENT

The Court should grant this Application *ex parte*[3] because Applicant satisfies all of the statutory prerequisites for a 28 U.S.C. § 1782 action, and the discretionary factors all favor granting this Application.

## I. STANDARD FOR GRANTING RELIEF

Section 1782 provides for "assistance in obtaining documentary and other tangible evidence as well as testimony." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 248 (2004). The statute provides that "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal." *In re del Valle Ruiz*, 2019 U.S. App. LEXIS 30002 (2d Cir. October 7, 2019), quoting 28 U.S.C. § 1782(a).

Courts have distilled §1782's language into a two-part test consisting of a mandatory component and a discretionary component for granting relief. *First*,

> A district court is authorized to grant a § 1782 request where: (1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a proceeding before a foreign or international tribunal, and (3) the application is made by a foreign or international tribunal or any interested person.

*Symeou v. Hornbeam Corp. (In re Hornbeam Corp.)*, 722 F. App'x 7 (2d Cir. 2018); see also *Mees v. Buiter,* 793 F.3d 291 (2d Cir. 2015), citing *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76 (2d Cir. 2012).

---

[3] Courts in the Second Circuit routinely handle §1782 requests on an *ex parte* basis. *In re Hornbeam Corp.*, 2015 U.S. Dist. LEXIS 142361 (S.D.N.Y. 2015), *aff'd*, *Symeou v. Hornbeam Corp. (In re Hornbeam Corp.)*, 722 F. App'x 7 (2d Cir. 2018) (collecting cases, and noting that "[d]istrict courts may and customarily do resolve applications for discovery pursuant to § 1782 through *ex parte* proceedings" and that there is a "widespread recognition that § 1782 applications are properly handled *ex parte*"); see also *In re O'Keeffe*, 650 F. App'x 83, 85 (2d Cir. 2016), quoting *Gushlak v. Gushlak,* 486 F. App'x 215 (2d Cir. 2012) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*.")

*Second*, "[t]o guide district courts in the decision to grant a Section 1782 petition, the Supreme Court in *Intel* discussed non-exclusive factors (the '*Intel* factors') to be considered in light of the 'twin aims' of section 1782..." *In re del Valle Ruiz*, 2019 U.S. App. LEXIS 30002, citing *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 244 (2d Cir. 2018). Those factors are (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which event "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Id*., citing *Intel*, 542 U.S. at 264-65.[4]

## II. APPLICANT MEETS SECTION 1782'S STATUTORY REQUIREMENTS

### A. The Respondents reside or are found in this district

#### 1. Legal standard

Section 1782 does not define "found." *In re del Valle Ruiz*, 2019 U.S. App. LEXIS 30002. However, "§ 1782(a) supports a flexible reading of the phrase 'resides or is found.'" *Id.*, citing *Edelman v. Taittinger (In re Edelman)*, 295 F.3d 171 (2d Cir. 2002). The Second Circuit has "repeatedly recognized Congress's intent that §1782 be 'interpreted broadly' […]" (*Id.*, citing *Brandi-Dohrn*, 673 F.3d 76) and held that the "statutory scope of 'found' extends to the limits of personal jurisdiction consistent with due process." *In re del Valle Ruiz*, *supra*.

---

[4] The Court's discretionary analysis should be guided by the twin congressional policy aims of § 1782. *Brandi-Dohrn,* 673 F.3d 76, 81 (2d Cir. 2012) ("District courts must exercise their discretion under § 1782 in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.") (internal citations omitted); *Gushlak*, 486 Fed.Appx. at 218 (same); see also *Intel*, 542 U.S. at 252 (rejecting additional requirements to granting relief as they "would disserve § 1782's twin aims.")

Noting that the Supreme Court has not addressed specific jurisdiction over nonparties, the Second Circuit held that:

> where the discovery material sought proximately resulted from the respondent's forum contacts, that would be sufficient to establish specific jurisdiction for ordering discovery. That is, the respondent's having purposefully availed itself of the forum must be the primary or proximate reason that the evidence sought is available at all. On the other hand, where the respondent's contacts are broader and more significant, a petitioner need demonstrate only that the evidence sought would not be available but for the respondent's forum contacts.

*In re del Valle Ruiz*, 2019 U.S. App. LEXIS 30002.

    2. <u>The Discovery sought in this Application proximately results from the Respondents' contacts with the Southern District of New York</u>

This Court has repeatedly granted applications pursuant to Section 1782 seeking intermediary bank discovery from the New York Banks and TCH. Le Diascorn Decl., ¶¶26-35. The discovery sought here directly relates to their contacts with this District, as described in the accompanying Declaration of Berenice Le Diascorn. *Id.*, ¶¶9-22. *Nike, Inc. v. Wu*, 349 F. Supp. 3d 310 (S.D.N.Y. 2018) ("*Nike I*"), *aff'd*, *Nike, Inc. v. Wu*, 349 F. Supp. 3d 346 (S.D.N.Y. 2018) ("*Nike II*"). Specifically, the discovery sought here is records relating to wire transfers, payments, and documents relating thereto routed through the Respondents in New York City revealing transactions of value made in fraud of Applicant's rights, in order to conceal, misappropriate, or assign the Applicant's property and avoid repayment of the Debt. Vieira Decl., ¶¶9-15. The Respondents act as worldwide correspondents in New York City to process U.S. Dollar denominated wire transfers. Le Diascorn Decl., ¶¶9-22; see also <u>Ex. D</u> to Le Diascorn Decl., excerpts from the Accuity Worldwide Correspondents Bank Directory. It appears from the Worldwide Correspondents Bank Directory, that the banks processing U.S. Dollar denominated

wire transfers passing from international banks, including banks located in Brazil, are virtually all located in New York City and include most of the New York Banks.[5]

The Respondents not only conduct business in this district, but also have long-established connections to New York. They each maintain headquarters or branches in this District and have previously accepted and responded to subpoenas in Section 1782 applications, initiated by Applicant's New York counsel. Le Diascorn Decl., ¶¶23-24. In addition, the New York Banks are either participants in the Clearing House Interbank Payments System ("CHIPS"), the Federal Reserve's Fedwire Fund Service ("Fedwire"), or a major participant in the clearing of international U.S. Dollar denominated transfers. *Id.*, ¶¶9-22 and Exs. A-B. Almost all New York Banks are registered with the New York Department of Financial Services to do business in New York, as required by N.Y. Banking Law § 200. *Id.*; Ex. E to Le Diascorn Decl.

The Respondents' ability to conduct business and process wire transfers and payments, is completely dependent upon their extensive use of their contacts in New York and the subject of the discovery sought through this Application.

In addition, the New York Court of Appeals has recognized the "widespread use of correspondent accounts nominally in New York to facilitate the flow of money worldwide, often for transactions that otherwise have no other connection to New York, or indeed the United States." *Licci v. Lebanese Can. Bank, SAL*, 20 N.Y.3d 327 (2012) ("*Licci III*"). Therefore, the repeated use of a correspondent account in New York, in effect, a "course of dealing" show "purposeful availment of New York's dependable and transparent banking system, the dollar as a stable and fungible currency, and the predictable jurisdictional and commercial law of New York

---

[5] *See* for example Ex. D to Le Diascorn Decl. at p. 184, the correspondent banks for U.S. Dollar are "Bank of America, N.A., ***New York City***" and "The Bank of New York Mellon, ***New York City***." (Emphasis added).

and the United States." *Licci v. Lebanese Canadian Bank*, 732 F.3d 161 (2d Cir. 2013) ("*Licci IV*"), quoting *Licci III,* 20 N.Y.3d 327. Relying on *Licci III* and *Gucci III*, Chief Judge McMahon in *Nike II*, held that "the Banks' establishment and maintenance of correspondent accounts was sufficient to support the exercise of personal jurisdiction over the Banks for purposes of the Subpoenas." *Nike II*, 349 F. Supp. 3d 310. "This alone would be sufficient to establish that the Banks have sufficient minimum contacts with the forum, as 'the selection and repeated use of New York's banking system … constitutes purposeful availment of the privilege of doing business in New York.'" *Nike I*, 349 F. Supp. 3d 310, quoting *Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87 (S.D.N.Y. 2015) ("*Gucci III*") (internal quotation omitted).

Here, the discovery sought—wire transfers and documents relating thereto, revealing transactions effectuated with the intent to conceal, misappropriated, or assign Applicant's property and avoid repayment of the Debt, and for which the Respondents were involved as originating bank, beneficiary bank, intermediate or correspondent bank to CHIPS, Fedwire, or otherwise facilitated interbank funds transfers—proximately results from their forum contacts with this District. Vieira Decl. ¶¶9-23.

Moreover, the Respondents would not suffer hardship as they are "simply required to produce" limited records maintained in this District. *Nike I*, 349 F. Supp. 3d 310 ("Here, as in *Gucci III*, such burdens are either 'minimal or non-existent,' as all of the Banks have physical branches in the forum, and can be no stranger to litigation in it […]") (internal citation omitted); see also *First Am. Corp. v. Price Waterhouse Ltd. Liab. P'ship*, 154 F.3d 16 (2d Cir. 1998). Given the lighter burden placed on the Respondents in the discovery context—who are asked only to provide evidence, not to defend their conduct or risk damages or other penalties—it is

wholly consonant with due process to authorize Applicant to conduct discovery on the Respondents, as the burden is "minimal or non-existent." *Nike I*, 349 F. Supp. 3d 310.

Therefore, Applicant has satisfied the first requirement under § 1782.

**B.     The Discovery sought is for use in a proceeding in a foreign tribunal**

Section 1782 expressly provides that evidence collected may be "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a). *Gushlak v. Gushlak*, 486 F. App'x 215 (2d Cir. 2012); see also *In re Gorsoan Ltd.*, 2020 WL 409729, at *6 (S.D.N.Y. 2020), quoting *Mees*, 793 F.3d at 299 ("an appplicant may seek discovery of any materials that can be made use of in the foreign proceeding to increase her chances of success."). Applicant satisfies this statutory requirement because the discovery sought through the instant Application is for use in a pending proceeding before a foreign tribunal. Vieira Decl. ¶¶3-15.

A Section 1782 application can be made as long as the foreign proceeding is "within reasonable contemplation" at the time the 1782 application is filed, but need not be pending or imminent. *Intel*, 542 U.S. 241, 248; see also *Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 116 (2d Cir. 2015) ("It is not necessary for the adjudicative proceeding to be pending at the time the evidence is sought, but only that the evidence is eventually to be used in such a proceeding"). Seeking information to plead or prove a claim that has already been identified and articulated with particularity is be authorized under Section 1782. *In re Mangouras,* 2017 WL 4990655 (S.D.N.Y. 2017); see also *In re Hornbeam Corp.*, 722 F. App'x 7 (A foreign proceeding was reasonably contemplated where the applicant represented in a sworn declaration that it intended to initiate litigation and articulated a theory on which it intended to litigate); *In re Gorsoan*, 2020 WL 409729, at *6 (holding that Section 1782 permits asset discovery for use in a foreign proceeding).

9

Felipe Vieira, counsel for Applicant in the Foreign Proceedings, explains in his Declaration that Applicant brought civil enforcement proceeding against Empat, for turnover of the sugar Empat held as security for Copertrading's repayment of the Debt under the collaterals, or, had Copertrading removed the sugar from its warehouse, requesting that the turnover obligation be converted into a money judgment in an amount equivalent to the value of the sugar. Vieira Decl. ¶¶11-12. Empat filed a motion to dismiss the Pending Proceeding, arguing, *inter alia*, that Copertrading never transferred the sugar to the Applicant and that the sugar was removed at the order of the Reorganization Court. *Id*. ¶13. Applicant intends to show Empat and Copertrading colluded to remove the sugar subject to the collateral granted to the Applicant, without the Applicant's consent and in fraud of Applicant's rights, and attempt to use the Reorganization Court's rulings to justify their misdeed, Copertrading having wrongfully listed Applicant as an unsecured creditor in its Reorganization Proceeding and otherwise having omitted from its accounting documents that the sugar had been exported and the value it gained from it. *Id*. ¶15-17.

Applicant has therefore identified and articulated with particularity the Claims that is intends to bring in the Foreign Proceedings before the Brazilian courts.

In light of the foregoing, Applicant meets the second requirement under Section 1782.

### C. <u>Applicant is an Interested Person</u>

A person who has "participation rights" and "possesses a reasonable interest in obtaining judicial assistance … qualifies as an interested person within any fair construction of that term." *Intel*, 542 U.S. at 256-7 (2004) (internal citations omitted); see also *In re Hornbeam Corp.*, 2015 U.S. Dist. LEXIS 142361.

Here, Applicant clearly possesses a reasonable interest in obtaining the assistance requested as the plaintiff in the Pending Proceeding. Vieira Decl. ¶12 and Ex. 1.

In addition, a creditor like Applicant is also an "interested person" if "the role of a creditor under the relevant jurisdiction's law might confer certain procedural rights that allow the creditor to participate and submit evidence in the proceeding." *KPMG*, 798 F.3d at 120; accord *In re Mangouras*, 2017 WL 4990655, at *6 (S.D.N.Y. 2017), vacated and remanded on other grounds, 980 F.3d 88 (2d Cir. 2020).

Applicant has brought a claim in the Reorganization Proceeding contesting its status as an unsecured creditor, and intends to submit evidence that Copertrading purposefully and fraudulently listed Applicant as such. Vieira Decl. ¶¶9, 20.

Therefore, Applicant meets the third statutory requirement under 28 U.S.C. § 1782(a).

## III. APPLICANT MEETS THE *INTEL* DISCRETIONARY FACTORS

As noted above, once the District Court has determined that the mandatory requirements for relief under Section 1782 are met, the Court is free to grant discovery in its discretion. *In re del Valle Ruiz*, 2019 U.S. App. LEXIS 30002. Additionally, that discretion must be guided by the twin policy aims of Section 1782: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts. *Brandi-Dohrn*, 673 F.3d at 81. Here, these discretionary factors weigh in favor of granting the requested relief.

*First*, there is no expectation that any of the Respondents will be participants in the Foreign Proceedings. Vieira Decl. ¶26. As such, this Application constitutes the only practical and timely method for obtaining the needed evidence for use there. *Id*. Indeed, absent the relief sought here, the evidence would almost certainly remain outside the reach of the Brazilian courts.

*Id*. Thus, since the Respondents will likely not be parties to the Foreign Proceedings, the need for the evidence sought herein through the instant Application is more apparent and this factor weighs in favor of granting recognition. *Intel*, 542 U.S. at 264 ("the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad.")

*Second*, there is no indication that the foreign tribunal would be unreceptive to the evidence. Vieira Decl. ¶27.

*Third*, the documentary and testimonial evidence sought through the instant Application would likely be admissible in the Foreign Proceeding and does not otherwise circumvent any proof-gathering restriction under the laws of Brazil. *Id.* Even if the documents were not used as evidence in that proceeding, the Second Circuit has held that Section 1782(a) contains no requirement that particular evidence be admissible in a foreign proceeding to be considered "for use in a proceeding in a foreign or international tribunal." *Brandi-Dohrn*, 673 F.3d 76, 77.

*Fourth*, this Application is not unduly intrusive or burdensome because it is of limited scope. Vieira Decl. ¶28. The proposed requests to the Respondents, demonstrated in the sample subpoena attached as Exhibit A to the Application, seek limited records relating to wire transactions for which the New York Banks were involved as originating bank, beneficiary bank, intermediate or correspondent bank to CHIPS, Fedwire, or where the New York Banks and TCH otherwise facilitated interbank funds transfers, as well as documents relating thereto, for the limited period beginning January 1, 2017 to the present. *Id*. This period is likely within the Respondents' document retention policies and the documentary evidence sought is of the type that Respondents regularly and easily retrieve and produce as third parties or actual parties in litigation. *Id*.; Le Diascorn Decl. ¶¶23-24.

For the foregoing reasons, each discretionary factor identified by the *Intel* Court weighs in favor of granting the Application.

## IV. APPLICANT SHOULD NOT BE REQUIRED TO GIVE NOTICE OF THIS APPLICATION

As explained above, District Courts in the Second Circuit routinely handle §1782 requests on an *ex parte* basis. *In re Hornbeam Corp.*, 722 F. App'x 7. While Federal Rule of Civil Procedure 45 requires service of third-party subpoenas on parties to the underlying litigation and the Federal Rules of Civil Procedure govern subpoenas issued under 28 U.S.C. § 1782, it is within the Court's authority to "order otherwise." *In re Hornbeam Corp.*, 722 F. App'x 7; see also *In re Reyes*, 2019 WL 6170901, at *1 (S.D.N.Y. 2019).

Courts in this Circuit have exercised such discretion and declined to quash subpoenas automatically based on the lack of notice absent some showing of prejudice. *In re Speer*, 754 F. App'x 62, 63–64 (2d Cir. 2019), citing *Malmberg v. United States*, 2010 WL 1186573, at *2 (N.D.N.Y. 2010); *Ragusa v. United Parcel Serv.*, 2008 WL 4200288, at *1 (S.D.N.Y. 2008); see also *In re Hornbeam Corp., supra* (finding "no abuse of discretion" in a district court's decision not to quash or vacate a subpoena based on a finding that the movant "did not establish prejudice from the lack of notice").

Further, in *In re Olga Kurbatova*, the applicant requested that she not be required to serve an expected defendant in a contemplated Swiss proceeding. Case No. 18-mc-469 (S.D.N.Y. 2018). The applicant successfully argued that there would be no prejudice to the expected defendant, as he would be permitted to adjudicate the admissibility of any discovery received by the applicant in response to the application in the contemplated proceeding at the appropriate time. *Id.,* citing *Euromepa S.A. v. R. Esmerian, Inc.,* 51 F.3d 1095, 1101 (2d Cir. 1995) (stating that discovery and admissibility under foreign law is not relevant to the Section 1782 analysis

because foreign courts are more appropriately positioned to rule on these issues).

There would be no prejudice to the party against whom the discovery is likely to be used in the Foreign Proceedings as it would be permitted to adjudicate the admissibility of any discovery received by Applicant in the Foreign Proceedings at the appropriate time. Vieira., ¶27. Likewise, the Respondents will have the opportunity to quash the subpoena that could be served in accordance with an order of this court granting the application.

Therefore, this Application is properly brought *ex parte*.

**CONCLUSION**

WHEREFORE, Applicant meets the statutory requirements under 28 U.S.C. § 1782 and *Intel* discretionary factors, and this Application for an Order in the proposed, or substantially similar form as submitted with the Application, should be granted.

Dated: August 31, 2022

Respectfully submitted,

By: _____*Berenice Le Diascorn*_____
        Berenice Le Diascorn

KELLNER HERLIHY GETTY & FRIEDMAN LLP
*Attorneys for BANCO BNP PARIBAS BRASIL S.A.*
470 Park Avenue South–7th Floor
New York, NY 10016-6819
Telephone: 212-889-2121
Email: berenice.lediascorn@khgflaw.com